Present: Carrico, C.J., Hassell, Keenan, Koontz, and Kinser,
JJ., and Compton and Stephenson, Senior Justices

HCA HEALTH SERVICES OF VIRGINIA,
INC., D/B/A RESTON HOSPITAL
CENTER, ET AL.

v.   Record No. 992934

STEPHEN M. LEVIN, M.D., ET AL.

                                              OPINION BY
                              SENIOR JUSTICE A. CHRISTIAN COMPTON
INOVA HEALTH SYSTEM                           June 9, 2000

v.   Record No. 992935

STEPHEN M. LEVIN, M.D., ET AL.


                 FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Leslie M. Alden, Judge

     In these appeals of a contempt order arising from a

defamation action, we consider the scope and application of the

statutory privilege from disclosure accorded peer review records

possessed by certain medical organizations.

     In 1998, Stephen M. Levin, M.D., filed an action for

damages against, among others, WJLA-TV, a television station

that broadcasts in the Washington, D.C., metropolitan area,

which includes Northern Virginia and Maryland.  In a second

amended motion for judgment, the plaintiff, who practices

medicine in Northern Virginia, sought recovery against

defendants for defamation, conspiracy, trespass, and the

unauthorized use of his name and picture.

The lawsuit stems from a news story WJLA-TV and the other defendants disseminated about the plaintiff. A board-certified orthopedist, the plaintiff alleges the defendants defamed him by accusing him of sexual assaults upon female patients in connection with his use of internal pelvic diagnostic examinations and "intrapelvic stretching techniques," when the patients were suffering from "pelvic floor problems." The plaintiff asserts the techniques he employs are recognized as "medically appropriate and effective." The plaintiff alleges defendants characterized him as the "DIRTY DOC" and the "X-RATED DOCTOR."

During discovery proceedings in the pending action, appellants Reston Hospital Center and Pentagon City Hospital (collectively, the hospitals) as well as appellant INOVA Health System (INOVA), received subpoenas duces tecum issued and served at the request of WJLA-TV. Neither the hospitals nor INOVA are parties to the litigation; instead, they are third parties whose peer review records are sought by WJLA-TV in its effort to defend the plaintiff's defamation action.

The subpoenas sought, for example, all documents dealing with any formal or informal complaint made against the plaintiff by any patient or health care provider; all documents describing any disciplinary action taken against the plaintiff by any hospital, medical licensing board, or medical association; and

2

all documents that refer to any decision to grant, revoke, or suspend the plaintiff's hospital privileges. WJLA-TV sought to use the information in an effort to validate its allegedly defamatory statements about the plaintiff and to resist plaintiff's claim for lost income as the result of the defamation.

The hospitals and INOVA filed motions to quash the subpoenas duces tecum. Relying on the provisions of Code § 8.01-581.17, they asserted the documents sought are privileged, confidential, and not discoverable.

As pertinent, the statute provides that peer review information kept by hospitals and health-related organizations "are privileged communications which may not be disclosed or obtained by legal discovery proceedings unless a circuit court, after a hearing and for good cause arising from extraordinary circumstances being shown, orders the disclosure" of such information.

Following briefing and oral argument on the respective motions to quash, the trial court denied the motions and ordered the documents produced. In a letter opinion, the court stated that Code § 8.01-581.17 is not "applicable outside the context of medical malpractice actions"; that the plaintiff had waived the statutory privilege by filing suit and putting his reputation at issue; and that, even if the statute is

3

applicable, WJLA-TV had shown the required "good cause arising from extraordinary circumstances" because the peer review records "are clearly relevant to the issue of the truth of the alleged defamatory statements, as well as the mitigation of damages suffered by Plaintiff for loss of reputation income."

Counsel for the hospitals and INOVA advised the trial court that they were of opinion the discovery order was interlocutory, that they wished to generate an appealable order, and thus their clients would not comply with the discovery order. The trial court, in a November 1999 order, found them in civil contempt of the disclosure order and assessed each organization a fine of $150 per day "until such time as each purges itself of the contempt."

Pursuant to Code § 19.2-318, the hospitals and INOVA appealed the contempt order to the Court of Appeals of Virginia, which stayed that portion of the trial court's order imposing daily fines. Subsequently, and before the matters had been determined by the Court of Appeals, this Court, in a December 1999 order entered pursuant to Code § 17.1-409(A) and (B)(1), certified these cases for review. We determined that the matters are of such imperative importance as to justify the deviation from normal appellate practice and to require prompt decision in this Court.

4

We awarded the appeals and consolidated them for briefing and argument.  On appeal, a brief amicus curiae has been filed supporting the appellants by The Virginia Hospital and Healthcare Association, Medical Society of Virginia, American Medical Association, and American Hospital Association.

Three questions are presented on appeal.  Is the privilege accorded by Code § 8.01-581.17 to medical peer review records applicable only in medical malpractice actions?  Does the statutory privilege belong to and may it be unilaterally waived by an individual physician who is the subject of peer review? Did WJLA-TV demonstrate "good cause arising from extraordinary circumstances," as required by the statute, to justify disclosure of confidential peer review records?  We answer each of those queries in the negative.

First, the statutory language is clear, unambiguous, and unqualified.  The plain language states that peer review records "are privileged communications which may not be disclosed or obtained by legal discovery proceedings."  No language of the statute limits its application to a particular type of suit or action.

When statutory language is clear and unambiguous, there is no need for construction by the court; the plain meaning of the enactment will be given it.  Brown v. Lukhard, 229 Va. 316, 321, 330 S.E.2d 84, 87 (1985).  Courts must give effect to

5

legislative intent, which must be gathered from the words used, unless a literal construction would involve a manifest absurdity.  Abbott v. Willey, 253 Va. 88, 91, 479 S.E.2d 528, 530 (1997).  Certainly, it is not manifestly absurd to conclude that the § 8.01-581.17 privilege applies to all kinds of litigation, not just to medical malpractice actions.

WJLA-TV contends that because the statute in issue is codified in the Medical Malpractice section of Chapter 21.1 of Title 8.01, the General Assembly necessarily intended that it not apply outside the medical malpractice context.  The trial court apparently was influenced by the statute's placement in the Code.

There is no merit to WJLA-TV's contention.  When, as here, the legislature's intent is unambiguously expressed in the statute, recourse to devices of statutory construction, such as comparing it with other statutes in pari materia or considering other extraneous circumstances, is not permitted.  City of Richmond v. Sutherland, 114 Va. 688, 691, 77 S.E. 470, 471 (1913).

Also, to restrict the privilege, as WJLA-TV urges and as the trial court ruled, ignores the underlying purpose of the statute.  The obvious legislative intent is to promote open and frank discussion during the peer review process among health care providers in furtherance of the overall goal of improvement

of the health care system.  If peer review information were not confidential, there would be little incentive to participate in the process.

Turning to the second question, we hold, contrary to the trial court's ruling, that the statutory privilege does not belong to the physician who is the subject of peer review and may not be unilaterally waived by the physician.  To allow the subject of peer review to waive the privilege runs counter to the purpose of the statute that encourages physicians to participate candidly in the peer review of other physicians, with the expectation that the information submitted will remain confidential and shielded from public disclosure.

Moreover, to allow the peer review subject to waive the privilege is at odds with the plain language of the statute. There is no suggestion in the words of the enactment that the privilege resides in, and may be waived by, the target of peer review.

Upon the third question, we conclude the trial court erred in finding WJLA-TV established the required "good cause arising from extraordinary circumstances" sufficient to warrant disclosure of the peer review records.  As we have stated, the trial court determined that the information sought by the subpoenas is "clearly relevant" to the issues of the truth of the alleged defamation as well as mitigation of damages.  The

7

court said that "WJLA is entitled to pursue all facts that are relevant to its defense of this action," and thus WJLA-TV had met the statutory requirement.

However, there is a vast difference between the legal principle of "relevance" and the term "extraordinary circumstances." There is nothing "extraordinary" about the mere need to defend this lawsuit. Manifestly, the General Assembly did not contemplate a test for disclosure that is so easily satisfied.

In the present case, WJLA-TV claimed only that it has to defend itself from defamation based on a news story it decided to disseminate after it, presumably, had become satisfied of its truth. The need to establish a defense, which must be made in all civil actions, is the essence of usual and ordinary, and is not "extraordinary."

Consequently, the contempt order will be set aside and the respective motions to quash the subpoenas duces tecum will be granted. Additionally, the daily fines will be annulled and dismissed. See Robertson v. Commonwealth, 181 Va. 520, 538-39, 25 S.E.2d 352, 360 (1943) (disobedience of order to produce documentary evidence excused if order is erroneous because defendant refused to divulge privileged information).

Record No. 992934 — Reversed and final judgment.
Record No. 992935 — Reversed and final judgment.